UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| ED WILLIAMS, *as assignee of the Bankruptcy Estate of Firefly Energy*, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 12-cv-1170 ) ) |
| CATERPILLAR INC., *a Delaware corporation*, | ) ) ) |
| Defendant. | ) ) ) |

## O R D E R  &  O P I N I O N

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 19). Defendant originally filed a Motion to Dismiss on October 11, 2012, to which Plaintiff responded on October 28, 2012. (Doc. 13; Doc. 16). On March 20, 2013, the Court sua sponte issued an Order for Plaintiff to properly establish diversity of citizenship, so that the Court could satisfy itself that it had subject-matter jurisdiction to hear the case. (Doc. 17). Plaintiff properly alleged citizenship in his Second Amended Complaint, Defendant subsequently filed a Motion to Dismiss Plaintiff's Second Amended Complaint, and Plaintiff filed a Response to Defendant's Motion.[1] (Doc. 18; Doc. 19; Doc. 20). For the reasons stated below, Defendant's

---

[1] Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint and Plaintiff's Response simply reassert and reincorporate arguments from their prior briefs; thus, the Court shall refer to Defendant's original Motion to Dismiss and

Motion to Dismiss Plaintiff's Second Amended Complaint is granted in part and denied in part and Defendant's Request for Oral Argument is denied.

## I. LEGAL STANDARD

"In ruling on Rule 12(b)(6) motions, the court must treat all well-pleaded allegations as true and draw all inferences in favor of the non-moving party." *In re marchFIRST Inc.*, 589 F.3d 901, 904 (7th Cir. 2009) (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). To survive a motion to dismiss under 12(b)(6), a plaintiff's complaint must first "describe the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 560-63 (2007)). If the complaint overcomes this first hurdle, it must next plead enough facts to "plausibly suggest that the plaintiff has a right to relief . . . above a 'speculative level.'" *Id.* While detailed factual allegations are not needed, a "formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545. Rather, "the complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557; *Tamayo*, 526 F.3d at 1084).

---

Memorandum, Plaintiff's original Response to Defendant's Motion to Dismiss, and Plaintiff's Second Amended Complaint as the operative documents for its analysis. (Doc. 13; Doc. 14; Doc. 16; Doc. 18).

## II. BACKGROUND[2]

Plaintiff, Ed Williams, is the former Chief Executive Officer of Firefly, a corporation that produced special types of batteries for a wide variety of uses. (Doc. 18 at 2). In 2009, Firefly required equity capital to continue its product development and to satisfy growing customer and market demands for its product. (Doc. 18 at 2). Plaintiff secured a commitment for funding from a large venture capital fund, Trident Capital, following many months of negotiations in May 2009. (Doc. 18 at 2). Trident Capital agreed to lead an investment group that would invest up to a total of $18 million of equity in Firefly pursuant to terms set forth in a term sheet that had an extended acceptance deadline of May 26, 2009. (Doc. 18 at 2). The term sheet was styled as non-binding, but Trident Capital had made representations of its commitment to Plaintiff. (Doc. 18 at 3). Pursuant to the terms of the term sheet, Trident Capital required existing holders of preferred Firefly stock to effectively relinquish their warrants for additional preferred Firefly stock. (Doc. 18 at 3). Trident Capital also proposed changes to the Firefly Board that would likely reduce the role of the company's existing largest shareholders, and proposed a substantial liquidation preference for new preferred stock to be issued under its facility, which would impact the liquidation rights of existing Firefly preferred stockholders. (Doc. 18 at 3). Defendant Caterpillar, Inc. was a large existing shareholder of Firefly. (Doc. 18 at 3).

---

[2] The background facts are drawn from Plaintiff's Second Amended Complaint, because the Court must treat all well-pleaded allegations in a complaint as true on a Motion to Dismiss. *See In re marchFIRST Inc.*, 589 F.3d at 904.

Firefly's eight-member Board of Directors (the "Board") at the time of negotiations with Trident Capital included Mr. Siamak Mirhakimi, a senior executive from Defendant Caterpillar, Inc. (Doc. 18 at 3). On May 26, 2009, the day of the acceptance deadline from Trident Capital, the Board had a telephonic meeting at which a quorum was present to accept Trident's term sheet and to finalize the terms of Trident's equity investment. (Doc. 18 at 3). Mr. Mirhakimi attended the Board meeting with Mr. Fanfu Li, a Caterpillar representative who was not a member of the Firefly Board. (Doc. 18 at 4). Caterpillar executives authorized Mr. Mirhakimi and Mr. Li to attend the Board meeting to make a presentation and offer on its behalf regarding an equity investment by Caterpillar in Firefly. (Doc. 18 at 4).

At the Board meeting, Mr. Mirhakimi told the Board that Caterpillar was prepared to invest at least $5 million in equity capital in Firefly, and to lead a round of equity investments that were effectively certain to generate more equity for Firefly. (Doc. 18 at 3-4). Mr. Mirhakimi expressly stated that he had 100% authorization from Caterpillar to invest at least $5 million in exchange for preferred stock of Firefly. (Doc. 18 at 4). The specific terms of the offer communicated by Mr. Mirhakimi and Mr. Li were that Caterpillar would invest $5 million, within two weeks, in exchange for the precise number of preferred shares to which an investor would be entitled based on a pre-money valuation of Firefly of $12 million. (Doc. 18 at 4). This was the arrangement previously agreed to by Trident Capital and would equate to 20,434,231 shares of Series D Preferred Stock at price per share of $0.24469. (Doc. 18 at 4). Moreover, under the Caterpillar deal, the preferred stock

4

that Caterpillar would acquire would have no liquidation preference, and Firefly's shareholders, such as Caterpillar, would not have to relinquish their existing warrants for Firefly stock. (Doc. 18 at 5). Mr. Mirhakimi and Mr. Li indicated that Caterpillar might also be willing to invest more than $5 million pending further discussions, but that Caterpillar's offer to invest at least $5 million for the preferred stock was not contingent on the outcome of any additional discussions and negotiations. (Doc. 18 at 5).

Because the Firefly Board preferred the terms of Caterpillar's offer, it voted to reject the Trident Capital equity investment and to proceed instead with the Caterpillar investment. (Doc. 18 at 6). On or about June 2, 2009, Caterpillar informed Firefly that it decided not to acquire the $5 million in Firefly preferred stock and would not lead a round of equity investors in the company. (Doc. 18 at 6). Firefly was unable to raise additional equity capital thereafter, and subsequently filed for bankruptcy in March 2010. (Doc. 18 at 2, 6). The trustee of Firefly's bankruptcy estate sold to Plaintiff all rights, claims, and causes of action that Firefly possessed against Defendant by Bill of Sale dated October 17, 2011. (Doc. 18 at 6). Plaintiff subsequently filed the present action against Defendant, alleging claims for Intentional Misprepresentation and for Anticipatory Breach of Contract. (Doc. 18 at 6-10).

### III. DISCUSSION

#### A. Motion to Dismiss

##### 1. Intentional Misrepresentation

Plaintiff asserts a claim for Intentional Misrepresentation based on Mr. Mirhakimi's statements that he had 100% authorization from Caterpillar to commit to a $5 million investment in Firefly, when he knew at the time that he did not. (Doc. 14 at 8). To sustain a claim for Intentional Mispresentation, Plaintiff must allege the following: 1) a false statement of material fact; 2) made by a party who knows or believes the statement to be false; 3) with the intent to induce another to act; 4) action by the other in reliance on the statement's truth; and 5) injury to the other resulting from that reliance. *Smith v. Kurtzman*, 531 N.E.2d 885, 889 (Ill. App. Ct. 1988). Defendant moves to dismiss Plaintiff's claim for Intentional Misrepresentation because it argues that the party who allegedly made the false statements was not Defendant, and that Plaintiff cannot link any such statements to Defendant by mere virtue of the fact that they were made by employees of Defendant. (Doc. 14 at 7, 10). Plaintiff alleges, however, that Defendant is liable for Mr. Mirhakimi and Mr. Li's misrepresentations under an agency theory. (Doc. 18 at 8). The Court rejects Plaintiff's assertions for the following reasons: 1) Plaintiff's allegation of actual express authority conflict with his allegation of intentional misrepresentation; and 2) Plaintiff did not sufficiently plead actual implied authority or apparent authority to sustain the claim.

Under Illinois law, Defendant may be bound to the conduct or statements of Mr. Mirhakimi and Mr. Li if they had the authority to act as Defendant's agents.

*See Curto v. Illini Manors, Inc.*, 940 N.E.2d 229, 232 (Ill. App. Ct. 2010) (applying principles of agency law to determine whether spouse had the authority to enter arbitration agreement on behalf of other spouse). Agency can be established a number of ways. "An agent's authority may be either actual or apparent, and actual authority may be express or implied." *C.A.M. Afffiliates, Inc. v. First Am. Title Ins. Co.*, 715 N.E.2d 778, 783 (Ill. App. Ct. 1999) (quoting *First Am. Title Ins. Co. v. TCF Bank*, 676 N.E.2d 1003, 1008 (Ill. App. Ct. 1997)). Actual express authority exists "when the principal explicitly grants the agent the authority to perform a particular act." *Id.* (quoting *Lydon v. Eagle Food Ctrs., Inc.*, 696 N.E.2d 1211, 1215 (Ill. App. Ct. 1998)). Even if the principal does not explicitly grant authority, it may still be "implied by facts and circumstances and it may be proved by circumstantial evidence." *Wasleff v. Dever*, 550 N.E.2d 1132, 1138 (Ill. App. Ct. 1990) (citing *Devers v. Prudential Prop. & Cas. Ins. Co.*, 408 N.E.2d 462, 465 (Ill App. Ct. 1980)). In some cases, the principal can be bound if the agent appears to have authority, even if no actual authority exists at all. *Weil, Freiburg & Thomas, P.C. v. Sara Lee Corp.*, 577 N.E.2d 1344, 1350 (Ill. App. Ct. 1991)) ("Apparent authority arises when a principal creates, by its words or conduct, the reasonable impression in a third party that the agent has the authority to perform a certain act on its behalf.").

   a. **Actual Express Authority**

In his Second Amended Complaint, Plaintiff alleges that "[Mr. Mirhakimi] had both the actual authority from Caterpillar to make a presentation and proposal at the May 26 board meeting with respect to an equity investment by Caterpillar in Firefly, and the apparent authority to do so by virtue of his attendance at the

meeting, and making of the presentation, with another Caterpillar representative [Mr. Li]." (Doc. 18 at 8). Plaintiff also alleges that "[Mr. Mirhakimi] knew . . . that he did not have 100% authorization from Caterpillar to commit to a $5 million equity investment in Firefly," but that he "made the foregoing statement with the intent that the Firefly Board rely on it, and that the Board, in doing so, would reject the Trident proposed investment." (Doc. 18 at 8). The Court construes these allegations to mean that Defendant authorized Mr. Mirhakimi and Mr. Li to attend the Firefly Board meeting to make a presentation and proposal regarding a potential investment by Defendant in Firefly. Mr. Mirhakimi and Mr. Li did not have authorization, however, to commit to a $5 million equity investment and made misrepresentations when they said that they had 100% authorization from Defendant to do so. Plaintiff confirms this interpretation in his Response, where he writes that "the alleged misrepresentation pertained not to whether Caterpillar intended to make this investment, but to whether [Mr. Mirhakimi] possessed 100% authority from Caterpillar to make the $5 million offer." (Doc. 16 at 21).

Herein, however, is where the contradiction lies. If Mr. Mirhakimi and Mr. Li had the actual express authority to attend the Firefly Board meeting and to make a presentation and proposal on behalf of Defendant, but misrepresented that they had 100% authority from Defendant to commit to a $5 million equity investment, then they exceeded the scope of their express authority when they made the misrepresentation. If so, Defendant should not be held liable for their alleged fraud. For their statements to trace back to the Defendant and to impose liability under an actual express authority theory, the Complaint must have

8

pleaded that Defendant expressly authorized Mr. Mirhakimi and Mr. Li to bind Defendant to the statements they made. *Connick v. Suzuki Motor Co., Ltd.,* 675 N.E.2d 584, 592 (Ill. 1996) (finding that claim of fraud could not be attributed to defendant when "plaintiffs ha[d] not alleged in their complaint that [defendant] expressly gave authority to the individual dealers to bind them to statements made regarding the [product's] safety"). If Defendant solely authorized Mr. Mirhakimi and Mr. Li to make a presentation on its behalf but not to commit to any final investment, then Defendant should not be held liable for statements made outside the scope of the express authority it granted.

### b. Actual Implied Authority

Although Defendant should not be held liable for statements made outside the scope of Mr. Mirhakimi and Mr. Li's actual express authority, it could potentially still be liable for the misrepresentations of Mr. Mirhakimi and Mr Li if the statements were made within their actual implied authority. Under an actual implied theory, Defendant may not have expressly authorized Mr. Mirhakimi and Mr. Li to commit to an investment, but that authority could nonetheless be implied, because "an agent has implied authority for the performance or transaction of anything reasonably necessary to effective execution of his express authority." *Advance Mortg. Corp. v. Concordia Mut. Life Ass'n*, 481 N.E.2d 1025, 1029 (Ill. App. Ct. 1985). Examples from which authority can be implied are through the agent's position or through a prior course of dealing with the agent. S*ee Patrick Eng'g, Inc. v. City of Naperville*, 976 N.E.2d 318, 329 (Ill. 2012) ("[I]mplied authority is actual authority proved circumstantially by evidence of the agent's position.") (construing

*Amcore Bank, N.A. v. Hahnaman-Albrecht, Inc.,* 759 N.E.2d 174, 181 (Ill. App. Ct. 2001)); *Curto v. Illini Manors, Inc.* 940 N.E.2d 229, 233 (Ill. App. Ct. 2010) ("Implied authority may be established from the circumstances of a case based on prior course of dealing of a similar nature between the alleged agent and principal or from a previous agency relationship.").

Here, the Court finds that Plaintiff has not sufficiently pleaded facts or circumstances that would have given Mr. Mirhakimi or Mr. Li the implied authority to commit to an investment despite it exceeding the scope of their express authority. Plaintiff alleges that Mr. Mirhakimi was a senior executive at Defendant's corporation, (Doc. 18 at 8), but that by itself is simply too vague to extract that he had the implied authority to commit to investment deals as part of his job position. Large corporations have a variety of senior executives with different authorities implied in their positions, for example, a Head of Marketing would not necessarily have the authority to finalize an acquisition, as a Director of Mergers and Acquisitions would not have the authority to launch the corporation's new advertising campaign. Plaintiff alleges that Mr. Li was also a representative for Defendant whose role was to participate in the presentation of the proposal, (Doc. 18 at 8), but again, that by itself does not indicate that he had implied authority to commit to any investment deals either. Furthermore, Plaintiff has not pleaded any other facts that would lead one to believe that Mr. Mirhakimi had implied authority to commit to an investment deal, such as evidence that Mr. Mirhakimi had entered into similar deals on behalf of Defendant before. All that can be extracted from the pleadings is that Mr. Mirhakimi and Mr. Li had the authority to make a

presentation regarding a proposed investment, but that they misrepresented that they had 100% authorization to commit to an investment. *See Opp*, 231 F.3d at 1065 (noting that plaintiff authorizing her husband to open the door and tender a package to movers did not also give him the necessary authority to sign the bill of lading, when she made no request for him to sign anything, or to make any agreement regarding liability). Thus, the Court finds that Plaintiff has not sufficiently pleaded implied authority.

### c. Apparent Authority

Finally, even in the absence of any actual authority, a principal may still be liable for the fraud of its agents if the agent acts under the guise of apparent authority. *A & B Freight Line, Inc. v. Ryan*, 576 N.E.2d 563, 568 (Ill. App. Ct. 1991) ("It is inconsequential whether the agent acted according to his instructions if he was acting within the scope of his apparent authority."); *see also Williams Elecs. Games, Inc. v. Barry*, 42 F. Supp. 2d 785, 796 (N.D. Ill. 1999), *aff'd sub nom. Williams Elecs. Games v. Garrity*, 366 F.3d 569 (7th Cir. 2004) ("Liability is based on the fact that the agent's position facilitates the consummation of the fraud, since from the point of view of the third person the transaction seems regular on its face and the agent appears to be acting in the ordinary course of business confided to him."). Under an apparent authority theory, it is irrelevant whether the agent had actual authority, as long as the principal created a reasonable belief in the third party that he did. *Patrick Eng'g, Inc. v. City of Naperville*, 976 N.E.2d 318, 329 (Ill. 2012) ("'Apparent authority . . . is the authority which the principal knowingly permits the agent to assume, or the authority which the principal holds the agent

out as possessing. It is the authority which a reasonably prudent person, exercising diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess.'") (quoting *Gilbert v. Sycamore Mun. Hosp.*, 622 N.E.2d 788, 795 (Ill. 1993)).

Thus, to determine whether apparent authority exists, the focus is on what the Defendant did to reasonably lead Plaintiff to believe that Mr. Mirhakimi and Mr. Li had the authority to commit to an investment deal even if they did not. Here, the Court finds that Plaintiff did not sufficiently plead conduct or words from the Defendant that would create the apparent authority that Mr. Mirhakimi and Mr. Li had the ability to commit to investment deals on its behalf. In his Response, Plaintiff argues that Defendant engaged in words that created the appearance of apparent authority through its express agents, (Doc. 16 at 17), but that argument shifts the focus onto what the agents said regarding their authorization rather than what Defendant itself said to create that image. Plaintiff further argues that Defendant established apparent authority by its deeds of sending Mr. Mirhakimi and Mr. Li to the Firefly Board meeting to make the investment presentation. (Doc. 16 at 17-18). As discussed above, however, the Court does not find that Mr. Mirhakimi and Mr. Li's attendance at the board meeting demonstrates enough conduct by Defendant toward the Plaintiff for Plaintiff to believe that they had the authority to commit to investment deals on Defendant's behalf. *See Williams Elecs. Games, Inc.*, 42 F. Supp. 2d at 796 (finding that the agents had apparent authority in a case where it was clear that defendant placed the agents in a position to solicit order from the plaintiff). While the question of authority and agency is one of fact,

*A & B Freight Line*, 576 N.E.2d at 568, Plaintiff must still sufficiently plead the grounds upon which an allegation of authority rests, and the Court finds that he has not done so here.

Accordingly, because Plaintiff's allegations of actual express authority inherently conflict with his claim for intentional misrepresentation, and because he has not sufficiently pleaded actual implied authority or apparent authority to sustain the claim, his claim for intentional mispresentation is dismissed.

### 2. Anticipatory Breach of Contract

In addition to his claim for Intentional Misrepresentation, Plaintiff alternatively pleads a claim for Anticipatory Breach of Contract. (Doc. 18 at 6-7). Under Illinois law, "the doctrine of anticipatory repudiation requires a clear manifestation of an intent not to perform the contract on the date of performance." *In re Marriage of Olsen*, 528 N.E.2d 684, 686 (Ill. 1988)). Presupposing this claim is the notion that a contract was validly formed to begin with. To form a valid contract, there must be "offer and acceptance, consideration, and definite and certain terms." *Van Der Molen v. Washington Mut. Fin., Inc.*, 835 N.E.2d 61, 69 (Ill. App. Ct. 2005). Here, Defendant argues that Plaintiff failed to sufficiently plead the existence of a valid contract, thus undercutting his claim for anticipatory breach of contract, for two reasons: 1) Plaintiff failed to sufficiently plead how Mr. Mirhakimi and Mr. Li had the authority to bind Defendant to a valid contract; and 2) assuming that Mr. Mirhakimi and Mr. Li did have the authority to form a contract, the terms of the alleged oral contract were not definite and certain enough to constitute an enforceable contract. (Doc. 14 at 12-14).

13

First, with regard to authority, Defendant argues that Plaintiff's admission that Mr. Mirhakimi knew that he did not have 100% authorization from [Defendant] to commit to a $5 million equity investment negates any allegation that he was acting as Caterpillar's agent. (Doc. 14 at 11). Defendant, however, erroneously inserts this allegation into Plaintiff's claim for Anticipatory Breach of Contract, when Plaintiff actually alleged it under his claim for Intentional Misrepresentation. Under Federal Rule of Civil Procedure 8(d)(2)-(3), a party may set out two or more statements of a claim or defense alternatively or hypothetically, and may also state as many separate claims or defenses it has, regardless of consistency. Accordingly, the Court will assess the statements made under each claim distinctly in making its determination, regardless of whether they raise inconsistent arguments.

As previously discussed, "in an agency relationship, the principal can be legally bound by action taken by the agent where the principal confers actual authority on the agent." *United Legal Found. v. Pappas*, 952 N.E.2d 100, 105 (Ill. App. Ct. 2011). Plaintiff alleges that "[Mr. Mirhakimi] and Mr. Li made [a] presentation on behalf of Caterpillar regarding Caterpillar's intended investment in Firefly." (Doc. 18 at 4). Plaintiff further alleges that "Caterpillar executives . . . authorized [Mr. Mirhakimi] and Mr. Li to attend the Board meeting and to make a presentation regarding the equity investment by Caterpillar in Firefly." (Doc. 18 at 4). Plaintiff finally alleges that "Mr. Mirhakimi was acting . . . as a representative of Caterpillar for the purposes of making the investment presentation and offer."

(Doc. 18 at 4). The Court finds that, taken together, Plaintiff sufficiently pleads actual express authority in these allegations.

Plaintiff's statements are unlike the examples Defendant cites to in its Memorandum, where the court in *Connick* explained that an allegation that the alleged agent misled Plaintiff "at the direction" of the alleged principal was insufficient to plead actual agency. (Doc. 14 at 7). Here, Plaintiff does not simply assert that Mr. Mirhakimi acted "at the direction" of Defendant. Rather, Plaintiff alleges that Caterpillar executives authorized Mr. Mirhakimi as its representative to attend the Board meeting, to make an investment presentation, and to make an offer. (Doc. 18 at 4). Because the Court must treat all well-pleaded allegations as true in analyzing a Motion to Dismiss, at this stage in the pleadings, the Court finds that Plaintiff's allegation sufficiently alleges actual express authority. The issue of whether such authority actually existed must thus proceed as "a factual question . . . [to] be determined by the trier of fact." *Granite Props. Ltd. P'ship v. Granite Inv. Co.*, 581 N.E.2d 90, 92 (Ill. App. Ct. 1991).

As Plaintiff has sufficiently pleaded actual express authority to sustain his claim under Anticipatory Breach of Contract, the next question is whether he has sufficiently pleaded the existence of a valid contract. Defendant argues that he has not, because the "Amended Complaint does not set forth the terms and conditions of the alleged contractual relationship." (Doc. 14 at 13). The Court disagrees. Plaintiff sufficiently pleads the necessary elements of offer and acceptance, consideration, and definite and certain terms. Plaintiff pleads an offer from Defendant to purchase shares of preferred stock in exchange for a $5 million equity

15

investment, acceptance from Plaintiff to take Defendant's offer and to refuse Trident Capital's offer, consideration of the equity for stock, and definite and certain terms of the offer. Specifically, Plaintiff alleges that Mr. Mirhakimi and Mr. Li offered to invest $5 million, within two weeks, in exchange for the number of preferred shares to which an investor would be entitled based on a pre-money valuation of Firefly of $12 million. (Doc. 18 at 4). This valuation equates to a deal of 20,434,231 shares of Series D Preferred Stock at a price per share of $0.24469. (Doc. 18 at 4). Plaintiff also alleges that the preferred stock that Defendant offered would have no liquidating preference, Firefly's shareholders would not have to relinquish their existing warrants for Firefly stock, and that the offer was not contingent on any discussions for future investments. (Doc. 18 at 5).

Defendant argues that what Plaintiff alleges as a contract is simply a proposal for the parties to enter into a definite agreement at some later date because among other things, a term sheet was never provided. (Doc. 14 at 13-14). This logic, however, ignores the "realistic awareness that the parties to contractual negotiations often intend to be bound before all the details of their deal have been worked out, in order to encourage a prompt start on performance of the contract." *Glass v. Kemper Corp.*, 133 F.3d 999, 1002 (7th Cir. 1998); *see also Borg-Warner Corp. v. Anchor Coupling Co.*, 156 N.E.2d 513, 517 (Ill. 1958) ("A contract is not rendered void because the parties thereto contract or agree to contract concerning additional matter.") Thus, whether certain elements were left for future discussion do not negate that Plaintiff has sufficiently pleaded definite and certain terms. Accordingly, Plaintiff's claim for Anticipatory Breach of Contract can proceed.

**B. Request for Oral Argument**

Defendant filed a Request for Oral Argument on its Motion to Dismiss pursuant to Local Rule 7.1(A)(2).  (Doc. 13).  A party desiring oral argument on a motion may make such a request, but any motion "may, in the court's discretion, be . . . determined upon the pleadings and the motion papers without benefit of oral argument."  CDIL-LR 7.1(A)(1)(d).  Here, the Court believes that the issues in this matter have been sufficiently briefed by the parties, and therefore, oral argument is not necessary.  Thus, Defendant's Request for Oral Argument is DENIED.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motions to Dismiss (Doc. 13; Doc. 19) are DENIED in part and GRANTED in part, and Defendant's Request for Oral Argument is DENIED.  This matter is REFERRED back to Magistrate Judge Gorman for further pretrial proceedings with regard to the claim for Anticipatory Breach of Contract.  IT IS SO ORDERED.

Entered this 15th day of April, 2013.

                                                  s/ Joe B. McDade
                                                  JOE BILLY McDADE
                                      United States Senior District Judge